No. 40,156

GEORGE E. WOOSLEY, *Appellant,* v. LYMAN ERICKSON, *Appellee.*

(298 P. 2d 268)

Opinion filed June 9, 1956.

*Richard L. Ashley* and *John N. Sherman, Jr.,* both of Chanute, argued the cause and were on the briefs for the appellant.

*Thomas C. Forbes* and *George Forbes,* both of Eureka, argued the cause and *Harold G. Forbes,* of Eureka, was with them on the briefs for the appellee.

The opinion of the court was delivered by

SMITH, C. J. This was an action for damages alleged to have been sustained when some object thrown from an ensilage blower hit plaintiff on the side of the head, injuring him. Judgment was for the defendant sustaining a demurrer to plaintiff's evidence. Plaintiff has appealed.

The amended petition alleged plaintiff was helping in the filling of a silo by furnishing, at the request of defendant's agent Madill, a tractor to power an ensilage blower, to cut and put it in a silo; that defendant was paid $1.25 a ton for his services and he furnished the cutter, blower and other equipment necessary, and all equipment used in the filling of the silo was under the sole and exclusive control and management of defendant, or his agents or employees; that the other parties engaged in the project were defendant's agents, employees and servants and what ever they did in the operation of the machinery was the act of defendant; that plaintiff was assisting Madill and defendant in filling the silo for the reason that Madill

had assisted him in a like manner and he was repaying him and the assistance previously given plaintiff by Madill constituted the remuneration for plaintiff's help; that the plaintiff's assistance and that of other parties present conferred a benefit on Madill and defendant in that plaintiff helped in furnishing a tractor, which was under the sole and exclusive control of defendant, and the others named furnished labor in the operation; that the cutting of the ensilages and blowing it into the silo in a proper manner was not dangerous since no foreign object would be mixed with the ensilage and no injury would result except when proper care was not taken; that through inattention on the part of defendant or the mismanagement of defendant, the defendant negligently operated the cutter so that a foreign object was allowed to become mixed with the ensilage so that when it was placed in the blower by defendant's agents, employees and servants it was hurled by the fan on the blower against the plaintiff, striking him on the left arm and the left side of his head, causing him permanent and temporary injury; that all the facts and circumstances concerning the cutting of the ensilage and delivery to the blower were exclusively within the knowledge of defendant and not within the knowledge of plaintiff and the foreign object being hurled with great force against plaintiff was due to some act or acts of negligence of defendant, the exact nature of which were unknown to plaintiff, and such negligence was the direct and proximate cause of the injury sustained by plaintiff.

The answer of defendant was an admission that plaintiff at the request of Madill furnished a tractor to power an ensilage blower and to assist in cutting the ensilage and that plaintiff's remuneration was repayment to Madill for assistance previously given plaintiff in a like manner; and that at the time and place mentioned the other persons named were assisting in filling a silo on Madill's farm; that defendant furnished Madill a cutter owned by him for a cash consideration; otherwise a general denial.

The answer further alleged that if any foreign object became mixed with the ensilage in the blower and caused the injuries complained of by plaintiff, it was not within defendant's knowledge or control or by reason of any act or omission on his part and that if plaintiff sustained the injuries claimed they were the result of an intervening cause and unknown to defendant. The answer further alleged plaintiff assisted in placing the silage in the blower and if a foreign object was allowed to become mixed with the ensilage it was

by reason of the acts of negligence on the part of plaintiff or his fellow servants, who were assisting him in placing the silage into the blower, and his acts of negligence were the cause of the injury sustained by him.

The evidence of plaintiff showed the silo on the farm of Ralph Madill was being filled; Madill had contracted with defendant to cut the ensilage and put it in his silo at $1.25 or $1.50 a ton; that defendant loaned Madill his blower and furnished a tractor to power the blower; that defendant was to furnish the cutter and do the actual cutting in the field; that on September 3, 1952, Madill and his son worked in the silo; George Madill, another son, was assisting in the unloading of the ensilage from the loaded trailers into the auger of the blower; that one Uden was supplying the power with his tractor to run the blower; Richard Hart and Cliff Erickson drove the tractor in hauling the trailers loaded with ensilage from the field to the blower; that there was a breakdown out in the field on September 3, 1952; that on September 4, 1952, everyone was present but Uden, who was replaced by plaintiff, who used his own tractor to run the blower. There was evidence the ensilage was cut in the field and brought into the silo in trailers, another tractor was used to pull the trailer up to an auger, which moved it into the blower, by which it was blown into the silo. There was evidence that defendant was in sole charge of the operation of the cutter out in the field. On the morning the plaintiff was injured somebody noticed plaintiff lying on the ground unconscious. They found a skinned place on the side of his head. He was taken to the hospital. There was a hole in the top of the blower where something had come out through it. It had not been in the side of the blower before the injury. The hole was described as big enough to put a baseball through and about two or two and a half inches wide. Nobody knows what was blown through the side of the blower.

It was brought out by several witnesses there was a pinch bar lying on the ground near where plaintiff fell. This pinch bar was used occasionally to raise the endgate of trailer. No other hard object was found near him. On the morning of the injury one trailer load had been run through the blower before the injury occurred. The injury occurred during the second trailer load. Soon after the injury it was noticed the teeth of the fan were bent and it took some time to get them repaired. The blower had run

nicely the day before the injury. The defendant had nothing to do with the operation of the blower after it was there on the farm. He was out in the field at all times. There was evidence when the first load of silage arrived from the field the auger and blower were clear of ensilage until the second load was deposited. When the second load arrived from the field they backed the trailer into the blower and secured it so that it would not back over the blower or the auger when they pulled on it with the tractor. Then the injury occurred. There was evidence there was a breakdown in the cutting of the ensilage on September 3 out in the field; that defendant was driving the tractor and field cutter; in driving over the irregular surface of the field the spout of the cutter came in contact with the trailer behind it and broke off and fell into the trailer, which was partially filled with ensilage; all work stopped and the trailer and cutter were driven to the farmyard, where the spout was repaired by defendant; wrenches were used, nuts and bolts were removed and the spout removed, repaired and replaced. All of the repair operations were done in close proximity to the partially loaded trailer of ensilage and were done by defendant. The second load of ensilage, however, was not the one which was in the farmyard that night. The plaintiff testified that he was using his tractor for power to run the blower and on the morning of September 4, 1952, he took his tractor, went to the farm and got ready to work; that the first load came in and went through fine; that plaintiff was on his tractor, which was still running and still on the blower and the blower was still idling; that they took the tailgate out and hooked the snatch block on and motioned for someone to start pulling it and he pulled it in there and at that time it got about half full; that was the last he remembered.

The plaintiff in his brief described the arrangement about as follows: The defendant had contracted with the owner of the farm to cut the corn in his field and chop it into small pieces, deliver it to the silo and to blow the ensilage into the silo for $1.25 or $1.50 a ton (Defendant disputes this statement and claims he was paid to cut ensilage in the field only and merely loaned his blower to Madill. This position does appear to be borne out by the record.); that defendant owned the tractor and field cutter as well as the blower; at any rate everybody at work that day but defendant was trading work. Mr. Madill had helped plaintiff previously and he was repaying Madill by labor and furnishing of his tractor for pre-

vious assistance on plaintiff's farm; there was no supervision exercised by defendant over any of the operations because everybody was familiar with the job. Plaintiff states, however, the machinery used was the defendant's and he could have directed the operation had he elected to do so.

Defendant demurrer to the evidence on the ground there was no evidence upon which a judgment could be recovered upon the theory of *res ipsa loquitur* and there was no evidence to show that defendant had sole and exclusive control over the blower, from which the injury occurred. The demurrer was sustained and judgment was entered in favor of defendant. From this judgment the appeal was taken.

The specification of error is that the district court erroneously sustained defendant's demurrer to plaintiff's evidence.

Plaintiff in his brief in this court states he relied and is relying on the doctrine of *res ipsa loquitur*. He argues he has shown the necessary elements necessary to bring the doctrine into effect. We find no fault with that rule. We have trouble, however, finding any evidence warranting the conclusion as a fact that the operation was under defendant's control. The whole affair was a matter of trading work, as is done so often by farmers in projects such as filling silos. Defendant was the only one paid for his work and he was running the cutter in the field some distance from the silo. We find no evidence that he was in charge of anything whatever except the machine he was operating. In *Starks Food Markets, Inc., v. El Dorado Refining Co.*, 156 Kan. 577, 134 P. 2d 1102, we held:

"It is an essential element to application of the doctrine of *res ipsa loquitur* that it must appear the instrumentality which produced or caused the injury complained of was, at the time of the injury, under the sole and exclusive control and management of the defendant. If it appear that two or more instrumentalities, only one of which was under the defendant's control, contributed to the injury, the doctrine should not be applied."

Plaintiff points out defendant was in sole control of the cutter, which operation also put the ensilage into the trailer, and that he pleaded in his amended petition that because defendant negligently operated the cutter a foreign object was allowed to become mixed with the silage in the trailer. He states negligence if any was committed out in the field where the trailers were loaded and argues defendant was in sole and exclusive control of that operation.

The trouble about applying the doctrine of *res ipsa loquitur* to that situation is for one, that operation was a considerable distance from the actual scene of the injury.

Considering the evidence, as we must in deciding whether a demurrer to the evidence should have been sustained, in its most favorable light for the plaintiff about all we are sure of is that plaintiff was injured by a hard object thrown from the blower. It is just as reasonable to presume or to infer that it was the pinch bar that got into the blower at the silo as that it was some hard object picked up in the field by the cutter. It seems to be a case where plaintiff is predicating liability on the fact that he was injured. He cannot do that. In *Stroud v. Sinclair Refining Co.,* 144 Kan. 74, 58 P. 2d 77, we said:

"Where the accident or occurrence out of which the injury arises is such that direct evidence of negligence is not available, and the circumstances are such the accident would not have occurred except the defendant be at fault, the circumstances are permitted to be shown as making a prima facie case. But such a showing is not sufficient where the evidence offered suggests with equal force that the injuries might have resulted without fault of the defendant." (p. 76.)

The opinion is persuasive here. It cannot be said that the injury would not have occurred had the defendant not been at fault. There was at least one way in which some hard object could have gotten into the blower besides the operation of the cutter.

The judgment of the trial court is affirmed.